Trenton R. Kashima (SBN No. 291405)
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
19800 MacArthur Blvd., Suite 270
Irvine, CA 92612
Tel: (212) 946-9389
tkashima@brysonpllc.com

*Attorney for Plaintiff*

*(Additional Counsel listed on Signature Page)*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT SCOTT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SMART & FINAL LLC, CHEDRAUI USA, and AMERIFOODS TRADING COMPANY LLC,<br><br>Defendants. | Case No. 1:25-cv-00732-JLT-CDB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ......................................................................................... 3

ARGUMENT ...................................................................................................... 4

I.      DEFENDANTS' ENTIRE MOTION FALSELY ASSUMES THE ELEVATED HEAVY METAL LEVELS HERE ARE HARMLESS ........................................................ 4

II.     PLAINTIFFS' CLAIMS SHOULD SURVIVE DISMISSAL .......................... 6

        A.      Plaintiff Pleaded an Actionable Omission Claim ................................. 6

                1.      The Product's Arsenic and Cadmium Contamination is Material ............. 7

                2.      Toxic Contamination Affects a Food Product's Central Function ........... 11

                3.      Defendants Had Exclusive Knowledge of the Level of Contamination and Defendants Concealed That Fact ................................................................ 12

                        a.      Defendants Had Exclusive Knowledge ........................................ 12

                        b.      Defendants Concealed the Fact That Their Product Contains Elevated Levels of Toxic Contaminants ...................................... 14

                4.      The Product Does Pose an Unreasonable Safety Risk .............................. 15

        B.      Plaintiff Adequately Pleaded His Implied Warranty of Merchantability Claim ... 16

                1.      The Produce Does Not Conform to the Trade Standard .......................... 17

                2.      The Product is Not Fit for Its Ordinary Purpose .................................... 17

                3.      Plaintiff Need Not Show Express Labeling Misrepresentations ............... 18

        C.      Plaintiff Can Recover for Unjust Enrichment .................................... 18

CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................... 3

*Barnes v. Nat. Organics, Inc.*,
    No. EDCV 22-314 JGB (PLAx), 2022 WL 4283779 (C.D. Cal. Sept. 13, 2022) ..................... 6

*Barton v. Kimberly-Clark Corp.*,
    No. 3:24-CV-01337-GPC-KSC, 2025 WL 2345228 (S.D. Cal. Aug. 13, 2025) ...................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................... 3

*Birdsong v. Apple*,
    590 F.3d 955 ..................................................................................................... 11, 16

*Bland v. Sequel Nat. Ltd.*,
    No. 18-cv-04767-RS, 2019 WL 4658361 (N.D. Cal. Jan. 18, 2019) ......................................... 5

*Boyd v. SunButter, LLC*,
    762 F. Supp. 3d 931 (C.D. Cal. 2025) ......................................................................... 9, 16, 17

*Bruton v. Gerber Products Co.*,
    703 F. App'x 468 (9th Cir. 2017) ....................................................................................... 18

*Buckey v. Cnty. of Los Angeles*,
    968 F.2d 791 (9th Cir. 1992) .............................................................................................. 3

*Concha v. London*,
    62 F.3d 1493 (9th Cir. 1995) ............................................................................................ 13

*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) .............................................................................................. 3

*Country Visions, Inc. v. MidSouth LLC*,
    2016 WL 1614585 (E.D. Cal. Apr. 22, 2016) ..................................................................... 19

*Daniel v. Ford Motor Co.*,
    No. 2:11-02890 WBS, 2016 WL 2899026 (E.D. Cal. 2016) ................................................ 12

*Dean v. Colgate-Palmolive Co.*,
    No. EDCV 15-0107 JGB, 2015 WL 3999313 (C.D. Cal. June 17, 2015) ................................ 3

*Fernandez v. Atkins Nutritionals, Inc.*,
   No. 3:17-cv-01628-GPC-WVG, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ......................... 18

*Gagetta v. Walmart, Inc.*,
   646 F. Supp. 3d 1164 (N.D. Cal. 2022) .................................................................. 10

*Garcia v. Gen. Motors LLC*,
   No. 118CV01313LJOBAM, 2018 WL 6460196 (E.D. Cal. Dec. 10, 2018)........................... 13

*Grausz v. Hershey Co.*,
   691 F. Supp. 3d 1178 (S.D. Cal. 2023)...................................................................... 6

*Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. ,
   2020 WL 6106813, at *6 (S.D. Cal. Apr. 27, 2020)....................................................... 6

*Hayden v. Bob's Red Mill Natural Foods, Inc.*,
   2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) .............................................................. 11

*In re Apple Processor Litig.*,
   No. 18-cv-00147-EJD, 2022 WL 2064975 (N.D. Cal. June 8, 2022) .................................. 18

*In re Baby Food Prods. Liab. Litig.*,
   No. 24-MD-03101-JSC, 2025 WL 986959 (N.D. Cal. Apr. 2, 2025) ................................ 9, 15

*In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*,
   No. 23-CV-1186 (AMD) (JAM), 2024 WL 4107244 (E.D.N.Y. Sept. 6, 2024) ......... 12, 16, 17

*In re Plum*,
   2024 WL 1354447 ................................................................................................. 11

*In re Plum*,
   2025 WL 1200700 ................................................................................................. 15

*In re Theos Dark Chocolate Litig.*,
   750 F. Supp. 3d 1069 (N.D. Cal. 2024) ..................................................................... 11

*In re Trader Joe's*,
   726 F. Supp. 3d ................................................................................................... 15

*Kwikset Corp. v. Sup. Ct.*,
   51 Cal. 4th 310 (2011) .......................................................................................... 11

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) ............................................................................. 2, 12, 14

*Miller v. Philips N. Am. LLC*, No.,
   24-CV-03781-RFL, 2025 WL 582160 (N.D. Cal. Feb. 20, 2025) ...................................... 8, 15

- iii -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rodriguez v. Mondelez Glob. LLC*,
    703 F. Supp. 3d 1191 (S.D. Cal. 2023) ............................................................ passim

*Rubenstein v. Neiman Marcus Grp. LLC*,
    687 F. App'x 564 (9th Cir. 2017) .......................................................................... 13

*Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV ,
    2016 WL 7486600, at *10 (C.D. Cal. Sept. 27, 2016) ........................................ 12

*Sciortino v. Pepsico, Inc.*,
    108 F. Supp. 3d 780 (N.D. Cal. 2015) .................................................................... 5

*Shin v. ICON Found.*,
    2021 WL 6117508 (N.D. Cal. Dec. 27, 2021) ...................................................... 18

*Underwood v. O'Reilly Auto Parts, Inc.*,
    699 F. Supp. 3d 1049 (D. Nev. 2023) ................................................................... 16

*United States v. Lang*,
    2007 WL 628048 (S.D. Cal. Feb. 23, 2007) ......................................................... 13

*Warshaw v. Xoma Corp.*,
    74 F.3d 955 (9th Cir. 1996) ..................................................................................... 3

Statutes

Cal. Com. Code § 2314(2) ............................................................................................. 18
Cal. Health & Safety Code § 25249.6 ............................................................................. 5
Cal. Health & Safety Code § 25249.10 ........................................................................... 5

Regulations

21 C.F.R. § 117.130 ....................................................................................................... 14
21 C.F.R. § 117.135 ....................................................................................................... 14
21 C.F.R. §§ 117.130-35 ........................................................................................ 13, 14

Other Authorities

3 Anderson U.C.C. § 2-314:77 ...................................................................................... 16

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS        Case No. 1:25-cv-00732-JLT-CDB

1    Plaintiff Everett Scott ("Plaintiff"), individually, and on behalf of all others similarly
2   situated, respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss
3   (ECF No. 21) (the "MTD") submitted by Defendants Smart & Final LLC, Chedraui USA, Inc.,
4   and Amerifoods Trading Company LLC (collectively "Defendants").  For the reasons set forth
5   below, Plaintiff's complaint is well pleaded, Defendants' Motion is without merit, and it should
6   be denied in its entirety.

7                                        **INTRODUCTION**

8        This is an important consumer protection class action lawsuit brought to address
9   Defendants' unlawful manufacturing, distribution, advertising, marketing and sale of their First
10  Street Long Grain Brown Rice ("First Street Rice" or the "Product") that contains elevated levels
11  of dangerous heavy metals and is therefore adulterated, illegal to sell, and unsafe for consumers to
12  consume.  The Product is marketed as a food product safe for consumption. However, it is
13  significantly more toxic than other brown rice products on the shelf, is contaminated with
14  dangerous levels of inorganic arsenic and cadmium and is not safe for human consumption.

15       Defendants' own manufacturing processes failed to detect elevated levels of inorganic
16  arsenic or cadmium and failed to prevent those products from reaching supermarket shelves.  As
17  Defendants concede in their Motion, "brown rice tends to be higher in heavy metals, including
18  arsenic and cadmium."  MTD at 9.  Far from absolving them of responsibility, however, this fact
19  places the onus on rice manufacturers like Defendants to ensure the food products they send to
20  supermarket shelves are safe to eat.  Indeed, Defendants also concede that numerous competitors'
21  products contain lower levels of inorganic arsenic and cadmium.  *Id.*   This highlights the
22  inescapable fact that rice manufacturers properly adhering to current good manufacturing practices
23  are safer to eat than Defendants' First Street branded rice.

24       Defendants' conduct flies in the face of parallel federal and state-level regulations.
25  Defendants knew their Product was less safe to consume than competitors' products and concealed
26  that fact from consumers in order to boost sales and charge a price premium.  Defendants also
27  failed to comply with the FDA current good manufacturing practices ("cGMPs") by allowing
28  batches of rice with elevated levels of inorganic arsenic and cadmium to be placed on the

- 1 -

supermarket shelves with their branding for consumers to purchase and eat. Had Plaintiff and other purchasers of Defendants' First Street Rice been made aware of the presence of elevated levels of dangerous heavy metals prior to purchase, they would have paid a reduced price or would not have purchased the Product at all. Second Amended Complaint (ECF No. 20) ("SAC") ¶¶ 2, 13–14, 17, 24, 41, 94. By failing to disclose the presence of elevated levels of inorganic arsenic and cadmium in their Product, Defendants charged a premium and enjoyed greater profits by falsely labeling a defective and dangerous Product, in violation of various states' consumer protection laws.

Now Defendants attempt to sweep their illegal and harmful conduct under the rug with the instant Motion to Dismiss. Their Motion is supported by a flurry of failed arguments but, at bottom, the central argument is simply that elevated levels of inorganic arsenic and cadmium are no big deal, "reasonable consumers" do not care, and the contamination does not diminish the quality or value of products. *See, e.g.,* MTD at 12. Defendants' downplaying of the contamination at issue should be given short shrift. As Plaintiff's allegations note, arsenic can cause a litany of severe health ailments including "respiratory, gastrointestinal, hematological, hepatic, renal, skin, and neurological and immunological effects." SAC ¶ 61. Additionally, inorganic arsenic is a well-documented carcinogen known to cause human cancers. *Id*. ¶ 62. And over time, arsenic "can lead to impaired brain development, growth problems, breathing problems, and a compromised immune system." *Id*. ¶ 63. As for cadmium, even low levels of over time can build up cadmium in the kidneys and cause kidney disease and bone loss. *Id.* ¶ 67. Furthermore, "[c]admium exposure can affect the gastrointestinal system, as well as lead to hemorrhagic gastroenteritis, liver and kidney necrosis, cardiomyopathy, and metabolic acidosis," and "[e]xposure to cadmium is also linked to cardiovascular disease and cancer" as well as a "tripling of risk for learning disabilities." *Id.* ¶¶ 68–69.

With these dangers in mind and considering the levels of inorganic arsenic and cadmium levels found in the Product, all of Defendants' arguments fall apart. The contaminants at issue here were found in far higher levels than "trace levels," MTD at 11, do pose "an unreasonable safety hazard," *id.* (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997)), and therefore did

give rise to a duty to disclose. The elevated levels of the contaminants at issue were material. Furthermore, the ability of a food item to be safely ingested is in fact "central to the Product's function." MTD at 18. The contaminated First Street Rice "did not possess even the most basic degree of fitness for ordinary use." MTD at 26.

Finally, Defendants argue for dismissal of Plaintiff's claim for unjust enrichment for two reasons, although Defendants' own brief conflates and confuses the two. First, as with Plaintiff's other claims, Defendants argue for dismissal of the claim as predicated on facts that do not give rise to any injury. MTD at 27. This argument fails for the same reason Defendants' other arguments fail. Second, Defendants argue for dismissal of the claim as duplicative of Plaintiff's other claims. *Id.* This argument fails because Plaintiff is permitted to bring a claim for unjust enrichment *in the alternative* to his statutory and contract claims at this stage in litigation.

Plaintiff's First Amended Complaint was adequately pleaded, and Defendant's arguments for dismissal are without merit. Accordingly, Court should deny Defendants' Motion in its entirety.

## **LEGAL STANDARD**

To overcome a motion to dismiss, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[a] complaint should not be dismissed under Rule 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Buckey v. Cnty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). At this state, the Court should "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the nonmoving party." *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

Rule 9(b) requires more detailed pleading where fraud is alleged. *See Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997). However, "Rule 9(b) is not an insurmountable hurdle." *Dean v. Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB, 2015 WL 3999313, at *7 (C.D. Cal. June 17,

2015). It only requires that "[a]verments of fraud must be accompanied by the 'the who, what, when, where, and how' of the misconduct charged" and that the "complaint must be specific enough to give defendants notice of the particular misconduct." *Id*.

## ARGUMENT

## I.    DEFENDANTS' ENTIRE MOTION FALSELY ASSUMES THE <u>ELEVATED HEAVY METAL LEVELS HERE ARE HARMLESS</u>

As a threshold matter, the entirety of Defendants' Brief relies on the factual claim that the levels of inorganic arsenic and cadmium in the Product are trivial, harmless, and immaterial. *See* MTD Section IV.A (arguing the defect is immaterial and Defendants had no duty to disclose); *id*. Section IV.B. (arguing Defendants breached no warranties because the Product is fit for consumption); *id*. Section IV.C (arguing Plaintiff has no claim for unjust enrichment because *inter alia* the levels of arsenic and cadmium in the Product caused no legal injury).

This is a factual claim and thus does not defeat Plaintiff's allegations on a Motion to Dismiss. This is especially true when Plaintiff's own Complaint details an overwhelming amount of evidence to the contrary. Arsenic "can cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, and neurological and immunological effects. Exposure to arsenic can also cause diabetes, atherosclerosis, and cardiovascular disease." SAC ¶ 61. Inorganic arsenic is a highly toxic carcinogen, which "[s]tudies have shown . . . can lead to impaired brain development, growth problems, breathing problems, and a compromised immune system." SAC ¶ 63. Cadmium fares no better. "Exposure to even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and bone loss. Cadmium exposure can affect the gastrointestinal system, as well as lead to hemorrhagic gastroenteritis, liver and kidney necrosis, cardiomyopathy, and metabolic acidosis." SAC ¶¶ 67–68. In addition, cadmium exposure is "linked to cardiovascular disease and cancer," and "[s]cientists have reported a tripling of risk for learning disabilities and special education among children with higher cadmium exposures." SAC ¶¶ 69–70. All of this is worsened by the fact that "cadmium has a prolonged half-life as it sequesters in human tissue." SAC ¶ 72.

1    The First Street Rice Product was found to contain "up to 201 parts per billion of inorganic

2    arsenic and 11.6 parts per billion of cadmium." SAC ¶ 12. And while Defendants downplay these

3    levels by noting that "brown rice tends to be higher in heavy metals," MTD at 9, this argument

4    fails because lab testing "singled out Defendants' First Street Long Grain Brown Rice as one of

5    the four brands with the highest arsenic levels." SAC ¶ 12, and, despite Defendants' protestations

6    that "minimizing arsenic and cadmium in rice has proven to be tricky," MTD at 9 (citing HBBF

7    Report at 10), their competitors seem able to bring rice to market with less than *half* the inorganic

8    arsenic on average.

9        Defendants' argument does nothing to defeat Plaintiff's allegations that the Product

10   contains harmful levels of inorganic arsenic and cadmium. *At best*, it shows that some (but not

11   all) of their competitors are also guilty of pushing out contaminated rice. Defendants cite to no

12   authority to support their "but officer, that other car was also speeding" argument, because no such

13   authority exists.

14       The other pillar of Defendants' Motion and their argument downplaying the harmful effects

15   of arsenic and cadmium is Proposition 65. This argument fails for the simple fact that Plaintiff did

16   not bring any claims under Proposition 65. Proposition 65 is a state law that governs the harms

17   caused by "chemical[s] known to the state to cause cancer or reproductive toxicity." *Rodriguez v.*

18   *Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1207 (S.D. Cal. 2023) (citing Cal. Health & Safety

19   Code §§ 25249.6, 25249.10(c)). While Plaintiff's allegations did list cancer *among* the laundry

20   list of severe health defects caused by inorganic arsenic and cadmium, his allegations were far

21   from limited to that scope. *See supra* at 4 (noting *inter alia* respiratory, gastrointestinal,

22   hematological, hepatic, renal, skin, and neurological and immunological effects) and 5 (noting

23   *inter alia* cognitive impairment in children).

24       Courts only find claims to be subsumed by Proposition 65 where they are "entirely

25   derivative of an unspoken Proposition 65 violation." *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d

26   780, 792 (N.D. Cal. 2015). Where, as here, a plaintiff's allegations rest in part on health risks

27   *outside the scope of Proposition 65*, their claims are not limited by Proposition 65's statutory

28   limitations. *See, e.g., Bland v. Sequel Nat. Ltd.*, No. 18-cv-04767-RS, 2019 WL 4658361, at *4

(N.D. Cal. Jan. 18, 2019) (finding the plaintiff's claims arising from the defendant's partial representations and from the alleged concealment of health risks fell outside the scope of Proposition 65); *Barnes v. Nat. Organics, Inc.*, No. EDCV 22-314 JGB (PLAx), 2022 WL 4283779, at *5 (C.D. Cal. Sept. 13, 2022) (holding that plaintiff's allegations of misrepresentation to consumers regarding the presence of heavy metals in the defendant's products, in addition to allegations that heavy metal consumption may contribute to health complications outside the focus of Proposition 65, supported an independent duty to disclose); *Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-cv-1345 DMS (AGS), 2020 WL 6106813, at *6 (S.D. Cal. Apr. 27, 2020) (holding the plaintiff's allegations regarding misleading statements and "concealment of the presence of carcinogenic substances" were separate of Proposition 65 claims).

The "Proposition 65 safe harbor thresholds" Defendants evoke throughout their Brief, *see, e.g.,* MTD at 13, apply only to *Proposition 65 claims*, which are not at issue here. *See Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1191–92 (S.D. Cal. 2023) (finding "[defendant's] argument that the alleged levels of heavy metals fall within Proposition 65's safe harbor provision is unavailing" because the plaintiff's claims were not subsumed by Proposition 65). Whether the elevated levels of inorganic arsenic and cadmium found in the Product injured Plaintiff and the proposed Class is a factual question, which Plaintiff has more than adequately supported with allegations in the Second Amended Complaint. Nothing else is required at this stage of litigation.

## II.  PLAINTIFFS' CLAIMS SHOULD SURVIVE DISMISSAL

### A.  Plaintiff Pleaded an Actionable Omission Claim

Out the gate, Defendants downplay the dangerous levels of contaminants in their Product, arguing that Plaintiff fails to adequately plead an omission claim because "Defendants had no duty to disclose naturally occurring, trace levels of heavy metals." MTD at 11. Because Defendants would have the Court believe this is a case about "trace amounts" of substances immaterial to consumers, according to Defendants, allowing this case to go forward would impose "a broad obligation to disclose." MTD at 11.

As detailed below, the levels of inorganic arsenic and cadmium in the Product far exceed "trace levels," they present real health risks to Plaintiff and consumers, and it is not unreasonable

for Plaintiff to find those levels material to his purchase, as he made clear that he did. *See* SAC ¶ 24.

### 1. *The Product's Arsenic and Cadmium Contamination is Material*

Defendants characterize Plaintiff's allegations regarding the materiality of heavy metal contamination here as "mere conclusions and vague statements about safety and possible health risks." MTD at 12. To support this wildly off-the-mark claim, Defendants cite only to SAC ¶ 32, stating that it "mak[es] the **bare assertion** that the 'Product contains unsafe levels of Cadmium and Arsenic." MTD at 12 (citing SAC ¶ 32) (emphasis added). In selectively citing to a single paragraph as a "bare assertion," however, Defendants willfully ignore **twenty-six paragraphs of allegations** in the Complaint, supported by a House Oversight and Reform Staff Report, two FDA reports, findings from a research program at Dartmouth, reporting in the Washington Post, three CDC articles, and three medical research papers, all detailing the health risks of arsenic and cadmium. *See* SAC ¶¶ 47–72. In short, there is nothing conclusory or vague about Plaintiff's allegations.

Once again ignoring all of this support, Defendants then argue that "[Plaintiff's] few attempts to legitimately support his materiality assertion do the opposite," referring to the HBBF Report cited in the Complaint. MTD at 12. Defendants argue that "Plaintiff creates the illusion that [arsenic and cadmium levels are material] by comparing the alleged levels . . . in the Product to the average in *all* rice production." MTD at 12. But Defendants' First Street Rice fares little better when compared to other brown rice products. The Product still contains *over double* the inorganic arsenic of Lundberg Family Farms Brown Rice Long Grain Regenerative Organic Certified Rice and Sarita Organic Long Grain Brown Rice (96.5 parts per million), and nearly double the inorganic arsenic of 4 Sisters Extra Long Grain Organic Brown Rice (106 parts per million), and Cajun Country 100% Louisiana Long Grain Brown Rice (118 parts per million). *See* HBBF Report at 30–31. As for cadmium, the Product still contains concentrations higher than numerous other rice brands, *id.*, and crucially, levels high enough to cause neurological developmental issues in children, *see* SAC ¶ 75, n25.

1    Defendants also suggest that because "virtually all rice *naturally* contains these

2    compounds, [] testing confirming that fact cannot be material to a reasonable consumer."  MTD at

3    12.  This obtuse argument holds no water.  Plaintiff here is not suing for *any* level of heavy metals.

4    Plaintiff, in clear and repeated allegations, is suing for *elevated* levels of inorganic arsenic and

5    cadmium, which scientific evidence has shown to be responsible for numerous severe health

6    defects.  *See, e.g.,* SAC ¶¶ 12 ("Lab testing found that samples of the Product could contain up to

7    155 parts per billion of inorganic arsenic and 25.9 parts per billion of cadmium . . . [and] this same

8    lab testing singled out Defendants' First Street Long Grain Brown Rice as one of the four brands

9    with the <u>highest arsenic levels</u>.") (emphasis added); 64 (detailing "the risks associated with

10   exposure to <u>higher levels</u> of arsenic") (emphasis added); 70 (detailing the risks associated with

11   "<u>higher</u> cadmium exposures") (emphasis added); 84 ("Defendants knew or should have known

12   they could control <u>the levels</u> of Heavy Metals in the Product by properly monitoring and testing

13   for Heavy Metals.") (emphasis added).

14   Plaintiff provides numerous yardsticks to measure the unreasonableness of the levels of

15   heavy metals in the Product.  In addition to the numerous competitors' products with lower levels

16   of inorganic arsenic and cadmium, Plaintiff also noted the EPA and FDA have set limits on arsenic

17   in apple juice and drinking water respectively, both at 10 parts per billion.  SAC ¶ 64.  Bottled

18   water has the same 10 parts per billion limit.  *Id.* ¶ 65.  Infant rice cereals have a limit of 100 parts

19   per billion.  *Id.*  None of these figures are meant to argue, as Defendants suggests, MTD at 17–18,

20   that these are specific limits that should be applied to brown rice.  Instead, they are examples of

21   food and drink that regulators have felt the impetus to put a limit on.

22   What Defendants are suggesting here is that Plaintiff needs to offer a specific concrete

23   number as a limit in his allegations.  But such a requirement cannot be found in the UCL, CLRA,

24   FAL, FDCA, or Sherman Law, and has been criticized in several recent decisions from district

25   courts within the Ninth Circuit. *See, e.g., Miller v. Philips N. Am. LLC,* No. 24-CV-03781-RFL,

26   2025 WL 582160, at *3 (N.D. Cal. Feb. 20, 2025) ("At this stage, Plaintiffs are not required to

27   allege the specific level at which microplastics pose a danger to the sensitive population. Rather,

28   it is sufficient to allege a plausible connection between the harms to infants and the significant

bioaccumulation of microplastics at the high levels described above."); *Barton v. Kimberly-Clark Corp.*, No. 3:24-CV-01337-GPC-KSC, 2025 WL 2345228, at *7 (S.D. Cal. Aug. 13, 2025) ("The Court acknowledges that some courts have required Plaintiffs to allege a particular level of lead that is associated with harm to support a misrepresentation claim involving heavy metals in products… The Court finds that this would veer too close to a question of fact that would be inappropriate to require at this procedural stage."); *In re Baby Food Prods. Liab. Litig.*, No. 24-MD-03101-JSC, 2025 WL 986959, at *16 (N.D. Cal. Apr. 2, 2025) ("In sum, there is no ironclad rule that Plaintiffs must allege the threshold dose of a toxic substance to advance their claims, and the Court will not require as much here."). This is because "[w]hat constitutes an 'unsafe level' of [arsenic] or cadmium is a question of fact not appropriately resolved on a motion to dismiss." *Rodriguez*, 703 F. Supp. 3d at 1205 (rejecting defendant's argument that "Plaintiffs cannot allege the Products contain unsafe levels of lead and cadmium just because the levels of lead and cadmium exceed the default MADLs set by regulation.").

Plaintiff's claims are perfectly in line with this case law, relying on the fact that Defendants' First Street Rice contains much higher arsenic levels than their competitors. *See Boyd v. SunButter, LLC*, 762 F. Supp. 3d 931, 949 (C.D. Cal. 2025), *adopted*, No. CV 24-7873-GW-BFMX, 2025 WL 84700 (C.D. Cal. Jan. 13, 2025) ("[p]laintiffs repeatedly allege that the [p]roducts contain an unsafe amount of cadmium that poses an unreasonable safety hazard, far exceeds recognized U.S. health standards, and far exceeds the amount contained in the products of Defendant's competitors, such as Once Again."). This is sufficient to allege that the Product is unreasonable safety risk. *Id.* Here, Defendants' First Street Rice was reported to have 201 ppb inorganic arsenic and 11.6 ppb of cadmium. SAC ¶ 12. To put that in context, a serving of the First Street Rice is only 45 grams (approximately 3/4 cup of cooked rice), "representing only 8.5 percent (or 170 calories) of the 2,000 daily calories that the FDA uses to calculate daily values on nutritional labels." SAC ¶ 32. Nonetheless, the First Street Rice "contributes more than 13 percent of the Maximum Allowable Dose Levels ('MADLs') for reproductive toxicants for cadmium and approximately **90 percent** of the No Significant Risk Levels ('NSRLs') for inorganic arsenic." *Id.* ¶ 32, n.5, 6 (emphasis added). Yet, the Complaint also notes that studies show that consumers, on

- 9 -

1   average, eat rice just over a cup of cooked rice per day. *Id.* ¶ 32. "This means that the consumer of

2   rice can eat the vast majority of their MADLs of cadmium, and nearly all of their NSRLs for

3   inorganic arsenic from consuming an average daily amount of Defendants' Product (which only

4   represents the amount of food eaten as a side dish for a meal)." *Ibid.*

5        And the resulting economic injury is also clear. Plaintiff alleged that he and other proposed

6   Class Members would not have purchased Defendants' First Street Rice, or would have paid less,

7   had they known that the Product contains or has the risk of containing significant levels of

8   hazardous heavy metals. *See, e.g.,* SAC ¶¶ 2, 13–14, 17, 24, 41, 94. There is legally cognizable

9   harm associated with consumers overpaying for food products that they did not know risked

10   containing significant heavy metals, when they could have easily purchased for a competing

11   product without the same risks. *See Gagetta v. Walmart, Inc.,* 646 F. Supp. 3d 1164, 1175 (N.D.

12   Cal. 2022). Indeed, it is not a logical leap to allege that consumers, when faced with two seemingly

13   similar brown rice products, would choose the one without elevated levels of heavy metals, if given

14   the option. For this same reason, Plaintiff reasonably alleges that the presence of elevated levels

15   of heavy metals would be material because it would affect their purchasing decision (and

16   ultimately the price of the First Street Rice). SAC ¶ 24. Here, Plaintiff alleges that <u>Defendants'</u>

17   <u>First Street Rice is specifically and uniquely toxic</u> and does not simply allege that all rice products

18   are contaminated.  *See* SAC ¶ 12.

19        Defendants' fixation on specific limits is echoed in their heavy reliance on Proposition 65.

20   As discussed in Section I pp. 4–7, this argument would defeat an additional cause of action <u>brought</u>

21   <u>under Proposition 65</u>, or limited to Proposition 65's scope, but Plaintiff's claims here are not so

22   limited.   Rather, "Plaintiff[] argue[s] [Defendants'] omissions fraudulently conceal an

23   unreasonable safety hazard. . . . Plaintiff[] allege[s] . . . [l]ow levels of lead can inhibit neurological

24   [and] [l]low levels of cadmium can cause kidney disease." *Rodriguez*, 703 F. Supp. 3d at 1210

25   (finding that "[p]laintiffs adequately allege a safety hazard independent of Proposition 65 [which

26   only implicates risk of cancer and reproductive harm]" and awarding dismissal because, unlike

27   here, the plaintiff did nothing to allege an "unreasonable" safety risk).

28

At bottom, Plaintiff pleads that he would not purchase the First Street Rice, or would have paid less, if he had known about the elevated levels of heavy metals at issue. SAC ¶¶ 2, 13–14, 17, 24, 41, 94. This is sufficient to plead materiality. *See Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 332 (2011) ("A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question'...."). Defendants' repeated grasping at straws does nothing to upset that pleading.

### 2. *Toxic Contamination Affects a Food Product's Central Function*

Next, Defendants argue that elevated levels of toxic contaminants that lead to "impaired brain development, growth problems, breathing problems, and a compromised immune system," SAC ¶ 63, do not affect a food product's central function. MTD at 18. Courts disagree, reasoning that "[t]he ordinary use of food to be eaten; thus, food that cannot be safely consumed 'lacks even the most basic degree of fitness' for its ordinary use." *Rodriguez*, 703 F. Supp. 3d at 1213 (quoting Birdsong, 590 F.3d at 958).

Defendants cite to three food contamination cases, but all three deal with "trace" levels of heavy metals and are thus unavailing. *See In re Plum*, 2024 WL 1354447, at *1–2 (suing for "detectable levels of heavy metals" and alleging "it is possible to manufacture baby food *without detectable levels* of heavy metals) (emphasis added); *Hayden v. Bob's Red Mill Natural Foods, Inc.*, 2024 WL 1643696, at *8 (N.D. Cal. Apr. 16, 2024) (plaintiff failed to plead the product's central function was affected because plaintiff failed to allege that the levels present in the product were harmful to health); *In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d 1069, 1090 (N.D. Cal. 2024) (product at issue was "chocolate containing *trace amounts* of Heavy Metals") (emphasis added). That a food product with "trace" levels of heavy metals does not cease to fulfill its central purpose proves too little. Defendants fail to cite to a single case holding that *dangerous levels* of toxic contamination in food do not affect that food's central function, which is fatal to its argument because those are the facts at issue *in this case*. Plaintiff here has alleged that the First Street Rice contained *elevated* levels of inorganic arsenic and cadmium that are dangerous to his health. SAC ¶¶ 12 ("Lab testing found that samples of the Product could contain up to 155 parts per billion of inorganic arsenic and 25.9 parts per billion of cadmium."); 32 ("[P]ublic reports and articles

recently revealed that Defendant's Product contains unsafe levels of Cadmium and Arsenic."). This is enough to meet his pleading burden at this stage of litigation. *See In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*, No. 23-CV-1186 (AMD) (JAM), 2024 WL 4107244, at *11 (E.D.N.Y. Sept. 6, 2024) (alleging a product is "not fit for [its] ordinary use (consumption by consumers) [because it] include[s] undisclosed levels of Heavy Metals' *unsafe for consumption* [] is clearly enough at this stage of the litigation.") (emphasis added).

Defendants concede that their remaining cited cases are emphatically "outside of the food context," MTD at 19, and for that reason they are all inapposite. *Inside* the food context, which is what is at issue in this case, it is well-settled that elevated levels of hazardous contaminants (as is alleged here) affect a food product's central function.

### 3. Defendants Had Exclusive Knowledge of the Level of Contamination and Defendants Concealed That Fact

Plaintiff has plausibly alleged an unreasonable safety hazard, materiality, and an effect central to the Product's function. To adequately allege an omission theory of injury, Plaintiff needs only to add to that a single *LiMandri* factor, and Plaintiff here has made an adequate showing for two.

#### a.    *Defendants Had Exclusive Knowledge*

Plaintiff sufficiently alleged that Defendants had "exclusive knowledge" of the alleged heavy metal contamination. "Generally, courts have not defined 'exclusive' literally, but have found such claims cognizable if the defendant had 'superior' knowledge of a defect that was not readily apparent and there is no or only ... limited publicly available information about the defect." *Salas v. Toyota Motor Sales, U.S.A., Inc*., No. CV 15-8629 FMO (EX), 2016 WL 7486600, at *10 (C.D. Cal. Sept. 27, 2016) (*quoting Daniel v. Ford Motor Co*., No. 2:11-02890 WBS, 2016 WL 2899026, at *4 (E.D. Cal. 2016)).

Here, Plaintiff alleged that consumers lack the meaningful ability to test or independently ascertain whether a product contains unusually high levels of cadmium and arsenic at the point of sale because they are unable to test the product before purchasing it and such testing would require the requisite scientific knowledge and equipment, which is not available to the average consumer.

SAC ¶ 31. Additionally, Plaintiff alleged that Defendants knew about the cadmium and arsenic in the First Street Rice because, by law, Defendants are required to implement controls to significantly minimize or prevent exposure to toxic heavy metals in their products. *Id.* ¶ 34, n. 10 (citing 21 C.F.R. §§ 117.130-35). Plaintiff, therefore, alleged that Defendants must have tested the First Street Rice for quality control purposes (and/or received Certificates of Analysis from suppliers) which disclosed the levels of toxic heavy metals such as cadmium and arsenic in the First Street Rice. *Id.* Based on this testing, Plaintiff alleged that Defendants had exclusive knowledge of the unsafe cadmium and arsenic levels. *Id.*

This is enough. *United States v. Lang*, 2007 WL 628048, at *1 (S.D. Cal. Feb. 23, 2007) ("[T]he pleadings need only give fair notice of the pleader's claim or defense so that opposing parties can respond, undertake discovery and prepare for trial."); *Garcia v. Gen. Motors LLC*, No. 118CV01313LJOBAM, 2018 WL 6460196, at *18 (E.D. Cal. Dec. 10, 2018) (holding that a car manufactures internal testing and knowledge regarding the design of the car was enough to establish their "superior knowledge" of the alleged defect). The fact that Plaintiff may not be more specific regarding allegations as to Defendants' knowledge is not fatal at this stage of the litigation. In fact, it is inescapable where a defendant has superior knowledge.  This is why Plaintiff is not required to plead "facts surrounding alleged acts… to which they [cannot] reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). As such, "[courts] relax pleading requirements where the relevant facts are known only to the defendant." *Id.*; *see also Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017) ("Without an opportunity to conduct any discovery, Rubenstein cannot reasonably be expected to have detailed personal knowledge of Neiman Marcus's internal pricing policies or procedures for its Last Call stores."). This is particularly true regarding Defendants' knowledge of the heavy metal levels, which even Rule 9 establishes does not have to be pleaded with any particularity. Fed. R. Civ. Pro. § 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Once again Plaintiff has met his pleading standard, and once again Defendants side step this fact by attacking a straw man, arguing that "the ubiquity of measurable levels of arsenic and

cadmium in rice is plainly accessible to the public and common public knowledge." MTD at 21. It bears repeating, as many times as Defendants beats this meritless drum, that Plaintiff's claims are not for mere "measurable" levels of arsenic and cadmium in the Product. *See supra*, Section II.A.1 pp. 8–9. Crucially, Plaintiff did not allege that Defendants have exclusive knowledge of the *mere presence* of heavy metals in the Product. Instead, Plaintiff alleged in clear and explicit terms that "Defendants have exclusive knowledge of the Cadmium and Arsenic ***levels*** in the Product." SAC ¶ 34 (emphasis added).

        b.     *Defendants Concealed the Fact That Their Product Contains Elevated Levels of Toxic Contaminants*

In the alternative, Plaintiff also pleads that Defendants concealed material facts to satisfy the "*LiMandri* factors." Defendants argue that Plaintiff relies on "bare allegations that Defendants chose not to disclose" the presence of hazardous contaminants, MTD at 22. Yet again, Defendants ignore important portions of the Complaint.

Plaintiff alleged that Defendants violated federal Current Good Manufacturing Practices regulations (SAC ¶ 34), which require Defendants to "control and test for known or reasonably foreseeable hazards, such as natural toxins." SAC ¶ 34, n.10 (citing 21 C.F.R. §§ 117.130-35). Indeed, federal law requires that Defendants conduct analysis to "identify and evaluate" naturally occurring hazards, including those introduced in raw materials, such as rice. *See* 21 C.F.R. § 117.130(a), (b)(2)(i), (c)(2)(iii). Once identified, such hazards must be controlled, including through appropriate quality control procedures. 21 C.F.R. § 117.135.

As Defendants concede in their own Motion, "[t]he presence of naturally occurring, trace arsenic and cadmium in rice is simply not a recent revelation." MTD at 9. Thus, Defendants concede this is the exact type of "hazard" that they were mandated to analyze and control according to cGMP regulations. Defendants also concede that the only levels of these toxic substances that have been tolerated for "decades," MTD at 25, are "trace" levels, MTD at 9. As emphasized repeatedly throughout this Brief, however, this case is about *elevated* levels of inorganic arsenic and cadmium, not mere "trace" or "measurable" levels.

- 14 -

1    Accordingly, Plaintiff is not just alleging some 'mere' non-disclosure, but that Defendants

2    actively concealed information they were required by law to disclose and heavy metal

3    contamination that they were required by law to monitor and control. This distinguishes this case

4    from those cited by Defendants.

5    **4.    *The Product Does Pose an Unreasonable Safety Risk***

6    Underlying nearly every argument in Defendants' Motion is the (incorrect) claim that

7    highly toxic levels of inorganic arsenic and cadmium in their food does not pose an unreasonable

8    safety risk. Here, that argument comes front-and-center, and it is no more compelling. Once again,

9    Defendants beat their well-worn straw man, relying on case law about the *mere presence* of heavy

10   metals. MTD at 22 (citing *In re Plum*, 2025 WL 1200700, at *1); *id.* at 23 (citing *In re Trader*

11   *Joe's*, 726 F. Supp. 3d at 1170). For the reasons already stated, this argument is unavailing. *See*

12   *supra*, Section II.A.1 p. 9 ("Plaintiff, in clear and repeated allegations, is suing for *elevated* levels

13   of inorganic arsenic and cadmium, which scientific evidence has shown to be responsible for

14   numerous severe health defects."); *see also* SAC ¶¶ 47–72 (detailing the health risks associated

15   with these elevated levels of arsenic and cadmium).

16   Defendants also seek to impose a pleading requirement that Plaintiff allege "the levels at

17   which those substances are unsafe." MTD at 22. As already discussed, however, this is contrary

18   to relevant case law which is critical of attempts to impose such a requirement at the pleading

19   stage. *See supra*, Section II.A; *Miller,* 2025 WL 582160, at *3 (N.D. Cal. Feb. 20, 2025)

20   ("Plaintiffs are not required to allege the specific level at which microplastics pose a danger to the

21   sensitive population. Rather, it is sufficient to allege a plausible connection between the harms to

22   infants and the significant bioaccumulation of microplastics at the high levels described above.");

23   *In re Baby Food Prods. Liab. Litig*., No. 24-MD-03101-JSC, 2025 WL 986959, at *16 (N.D. Cal.

24   Apr. 2, 2025) ("[T]here is no ironclad rule that Plaintiffs must allege the threshold dose of a toxic

25   substance to advance their claims, and the Court will not require as much here."); *Rodriguez* 703

26   F. Supp. 3d at 1205 ("What constitutes an 'unsafe level' of [arsenic] or cadmium is a question of

27   fact not appropriately resolved on a motion to dismiss.").

28

1   Plaintiff devotes twenty-six paragraphs of his Complaint to detail the health risks posed by

2   the levels of inorganic arsenic and cadmium in the Product, backed up by news reporting and

3   primary sources. Defendants ignore all twenty-six paragraphs. *See* Section I at 8, SAC ¶¶ 47–72.

4   Defendants ignore Plaintiff's cited news reporting. And Defendants ignore Plaintiff's cited

5   primary sources. *See id.*, SAC ¶¶ 47–72, n11–n28. It is no mystery why: if Defendants were to

6   acknowledge these well-pleaded allegations, they would have to concede that Plaintiff had

7   plausibly alleged the Product poses an unreasonable safety risk.

8   This is the same reason Defendants repeatedly employ their "mere presence" sleight of

9   hand: Defendants cannot defeat Plaintiff's *actual* claims, and so they must cast them as claims that

10  they can defeat. *See* MTD at 25 ("Plaintiff cannot establish that the mere presence of trace heavy

11  metals . . . is material to a reasonable consumer.").

12  **B.       Plaintiff Adequately Pleaded His Implied Warranty of Merchantability Claim**

13  "Courts and legal treatises have recognized that the implied warranty of merchantability

14  embraces a minimum level of safety." *See Underwood v. O'Reilly Auto Parts, Inc.*, 699 F. Supp.

15  3d 1049, 1062 (D. Nev. 2023) citing 3 Anderson U.C.C. § 2-314:77, Content of implied warranty

16  of merchantability — Safety (3d. ed.) ("The element of 'quality' within the implied warranty of

17  'merchantability' embraces the element of 'safety' for use. Thus, if a product is deemed unsafe

18  due to some defect at the time of sale, there will be a breach of the implied warranty of

19  merchantability."); 26 Am. Jur. 2d 1, Sales: Implied Warranty of Merchantability § 6 (2023)

20  ("Goods are not fit for ordinary purposes . . . when they are completely useless and therefore unfit

21  for any purpose."). And the hazard posed by a product's use is doubly disqualifying when dealing

22  with contaminants in the food we eat. *Boyd*, 762 F. Supp. 3d at 949 *citing Rodriguez*, 703 F. Supp.

23  3d at 1213 ("The ordinary use of food to be eaten; thus, food that cannot be safely consumed 'lacks

24  even the most basic degree of fitness' for its ordinary use" (quoting Birdsong, 590 F.3d at 958)

25  (internal quotation marks omitted)); *In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*,

26  No. 23-CV-1186 (AMD) (JAM), 2024 WL 4107244, at *11 (E.D.N.Y. Sept. 6, 2024) ("The

27  plaintiffs assert that Lindt's chocolate bars 'were not fit for their ordinary use (consumption by

28  consumers) as they include undisclosed levels of Heavy Metals' unsafe for consumption, which is

- 16 -

1   clearly enough at this stage of the litigation.")).  As noted above, Plaintiff alleges that the First

2   Street Rice is unsafe to eat, due to the elevated heavy metal levels present in the Product when

3   compared to its competitors.  *See*, *supra*, Section II.A.1 pp. 8–9; SAC ¶¶ 32, n.5, n8.

4        Defendants' arguments against Plaintiff's implied warranty claim ignore this case law,

5   pretend (once again) that the claims in this case for *any* level of heavy metals rather than

6   unreasonable levels, and ignore (once again) the volume of allegations (with primary sources and

7   other citations) that the Product's arsenic and cadmium contamination are indeed harmful.

8        **1.    *The Produce Does Not Conform to the Trade Standard***

9        As detailed at length above, Section I p. 5, the Product contains levels of arsenic and

10  cadmium much higher than many of its competitors.  And so Defendants instead attack a straw

11  man here, noting that "the testing on which Plaintiff relies found arsenic in 100% of the 145 rice

12  samples."  MTD at 26 (citing HBBF Report at 1).  This is as true as it is irrelevant.  Plaintiff's

13  claims do not arise from the *mere presence* of heavy metals at any level, but from the unreasonable,

14  heightened levels in the First Street Rice.  *See supra*, Section II.A.1 pp. 8–9.  Nor is it surprising

15  that it is not an industry standard to "disclos[e] the presence of heavy metals in [companies' rice]."

16  MTD at 26.  Defendants' competitors who were able to bring safer rice to market need not include

17  a warning.  *See Boyd*, 762 F. Supp. 3d at 949.

18       **2.    *The Product is Not Fit for Its Ordinary Purpose***

19       Next, Defendants' argument that the Product is fit for its ordinary purpose rehashes all of

20  their failed arguments above, and their argument here fails for the same reason.  "The ordinary use

21  of food is to be eaten; thus, food that cannot be safely consumed 'lacks even the most basic degree

22  of fitness' for its ordinary use."  *Boyd*, 762 F. Supp. 3d at 949 (*citing Rodriguez*, 703 F. Supp. 3d

23  at 1213) (internal quotation marks omitted).  Plaintiff here asserts that the First Street Rice was

24  "not fit for [its] ordinary use (consumption by consumers) as [it] include[s] undisclosed levels of

25  Heavy Metals unsafe for consumption, which is clearly enough at this stage of the litigation."  *In*

26  *re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig*., No. 23-CV-1186 (AMD) (JAM), 2024

27  WL 4107244, at *11 (E.D.N.Y. Sept. 6, 2024).

28

### 3.    *Plaintiff Need Not Show Express Labeling Misrepresentations*

The implied warranty of merchantability does not stem from omissions or misrepresentations, but whether a product at issue would "[p]ass without objection in the trade under the contract description" and "[is] fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(a), (c).  Defendants rely on a single case to conjure this requirement, *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628-GPC-WVG, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018).  But the *Fernandez* court cited the lack of concrete affirmations in its dismissal of the plaintiff's implied warranty claim *because that plaintiff's claim was predicated on the allegation that the label made affirmations of fact that were untrue. Fernandez*, 2018 WL 280028, at *12–13 ("Fernandez argues that Atkins's net carbs claims violate the implied warranty of merchantability because the products do not conform to the [] affirmations of fact made on the [label]. Fernandez's claim fails, however, because her complaint identifies no 'promise or affirmation' [] that Atkins has failed to keep.").  Here, Plaintiff's claim does not arise from "affirmations of fact made on the label," but on elevated levels of arsenic and cadmium that render the Product unmerchantable.  SAC ¶¶ 153–165.

### C.    **Plaintiff Can Recover for Unjust Enrichment**

Defendants argue that "[w]hen a plaintiff's misrepresentation and omission claims are dismissed, an unjust enrichment claim premised on the misrepresentation and omission claims must also fail.'" MTD at 27 (citing *In re Apple Processor Litig.*, No. 18-cv-00147-EJD, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022)).

This argument fails for two reasons.  First, Plaintiff's other claims are well pleaded and should not be dismissed.  Second, courts across California, as well as the Ninth Circuit, have all held that unjust enrichment claims are a standalone cause of action and are thus not predicated on the same elements.  *See*, *e.g.*, *Shin v. ICON Found.*, 2021 WL 6117508, at *3 (N.D. Cal. Dec. 27, 2021) ("[U]njust enrichment [is] a separate cause of action."); *Bruton v. Gerber Products Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) ("The California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment"); *Nava v. Kobe Steel, Ltd.*, at *1 (N.D. Cal. Oct. 8, 2019) ([U]njust enrichment … is an independent cause of action in California); *Country*

1  *Visions, Inc. v. MidSouth LLC*, 2016 WL 1614585, at *6 (E.D. Cal. Apr. 22, 2016) ("Defendants'

2  motion to dismiss on grounds there is no independent claim for unjust enrichment in California is

3  denied.").  This court should hold the same and allow Plaintiff's claim for unjust enrichment in the

4  alternative to move forward, as is standard in this Circuit.

5  <u>**CONCLUSION**</u>

6        For these reasons, the Court should deny Defendants' motion to dismiss. In the alternative,

7  Plaintiff requests leave to file an amended complaint to address any deficiencies.

8

9  DATED: December 8, 2025                    Respectfully submitted,

10                                            **BRYSON HARRIS SUCIU &**
                                              **DEMAY PLLC**

11

12                                            By:  /s/ Trenton Kashima

13                                            Trenton Kashima (SBN No. 291405)
                                              **BRYSON HARRIS SUCIU &**
14                                            **DEMAY PLLC**
                                              19800 MacArthur Blvd., Suite 270
15                                            Irvine, CA 92612
                                              Tel: (212) 946-9389
16                                            tkashima@brysonpllc.com

17                                            Nick Suciu III*
                                              **BRYSON HARRIS SUCIU &**
18                                            **DEMAY PLLC**
                                              6905 Telegraph Road, Suite 115
19                                            Bloomfield Hills, MI 48301
                                              Tel: (616) 678-2180
20                                            nsuciu@brysonpllc.com

21                                            Jason P. Sultzer*
                                              Philip J. Furia*
22                                            SULTZER & LIPARI, PLLC
                                              85 Civic Center Plaza, Suite 200
23                                            Poughkeepsie, New York 12601
                                              Tel: (845) 483-7100
24                                            Fax: (888) 749-7747
                                              sultzerj@thesultzerlawgroup.com
25                                            furiap@thesultzerlawgroup.com

26                                            *Pro hac vice* forthcoming

27
                                              *Attorneys for Plaintiff*
28                                            *and the Proposed Class*